[No. C014838. Third Dist. Feb. 28, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHN ROBERT MAURER, Defendant and Appellant.

1124

**COUNSEL**

Dale Dombkowski, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Edmund D. McMurray and Doris A. Calandra, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**DAVIS, J.**—An amended information charged defendant, a former high school music teacher, with 22 counts of improper sexual conduct involving 3

of his female students. The jury acquitted defendant of all of the charges except for two counts of misdemeanor child annoyance involving one of the three students, K.V. (Pen. Code, § 647.6; formerly Pen. Code, § 647a.)

The trial court properly instructed the jury on the mental state element required to convict defendant of the misdemeanor child annoyance charges involving K.V.: "Such acts or conduct [must be] motivated by an unnatural or abnormal sexual interest in [K.V.]." (CALJIC No. 16.440 (1990 rev.).) In another instruction, however, the trial court told the jury that "Motive is not an element of the crime charged and need not be shown." (CALJIC No. 2.51.) We conclude that the trial court erred in providing these conflicting instructions on this mental state element, and that this error cannot be deemed harmless beyond a reasonable doubt. Accordingly, we reverse the two convictions for misdemeanor child annoyance involving K.V. We set forth the facts pertinent to the K.V. charges in the discussion that follows.

## DISCUSSION

In the amended information, defendant was charged with two counts of violating Penal Code section 647.6 (hereafter section 647.6) as follows: (1) by describing to K.V. in late January 1991 a dream in which he was caught naked with her in bed, and (2) by describing to K.V. in April or May of 1991 a past incident where he digitally penetrated an older woman.

In line with CALJIC No. 16.440, the trial court correctly instructed the jury on the elements of the section 647.6 offenses involving K.V. as follows:

"Every person who annoys or molests any child under the age of 18 years is guilty of a misdemeanor.

"In order to prove such crime, each of the following elements must be proved:

"1. That a person engaged in acts or conduct, directed at a child under the age of 18, which would unhesitatingly disturb or irritate a normal person, if directed at such person, and

"2. Such acts or conduct were motivated by an unnatural or abnormal sexual interest in [K.V.]

"It is not necessary that the acts or conduct actually disturb or irritate the child, or that the body of the child be actually touched." (See § 647.6; *In re Gladys R.* (1970) 1 Cal.3d 855, 867-869 [83 Cal.Rptr. 671, 464 P.2d

127]; *People* v. *Pallares* (1952) 112 Cal.App.2d Supp. 895, 900-902 [246 P.2d 173]; *People* v. *Thompson* (1988) 206 Cal.App.3d 459, 463-466 [253 Cal.Rptr. 564].)[1]

Both the prosecution and the defense, however, requested that CALJIC No. 2.51 be given. The trial court instructed the jury with that instruction as follows: "Motive is not an element of the crime charged and need not be shown. However, you may consider motive or lack of motive as a circumstance in this case. Presence of motive may tend to establish guilt. Absence of motive may tend to establish innocence. You will therefore give its presence or absence, as the case may be, the weight to which you find it to be entitled."

This appeal presents three questions: (1) did the trial court err in giving CALJIC Nos. 16.440 and 2.51 regarding the section 647.6 offenses involving K.V.?; (2) did the defense invite this error?; and (3) was this error prejudicial? We conclude the trial court erred, the defense did not invite the error, and the error was prejudicial.

a. *Was There Error?*

The People argue that instructing with CALJIC Nos. 16.440 and 2.51 was not erroneous regarding the section 647.6 offenses because CALJIC No. 2.51 could not operate to cancel CALJIC No. 16.440. The theme of the People's argument is that "[m]otive, in this instance, is distinguishable from motivation." According to the People, the "motive" to commit a crime is a commonly understood notion. As the People explain, "Well-recognized motives for the commission of a crime are need, avarice, revenge, jealousy, and fear. [Citing 1 Witkin & Epstein, Cal. Criminal Law (2d ed. 1988) § 100, pp. 118-119.] Those emotional impulses are not elements of an offense. . . . That a child molester is motivated by an unnatural or abnormal sexual interest in the victim does not bear upon his 'motive' for committing the crime." We are not persuaded.

It is generally true that motive is not an element of a criminal offense. (See *People* v. *Daly* (1992) 8 Cal.App.4th 47, 59 [10 Cal.Rptr.2d 21]; see also 1 Witkin & Epstein, Cal. Criminal Law, *supra*, § 100, pp. 118-119.) But the offense of section 647.6 is a strange beast. As noted in *People* v. *Pallares*, *supra*, 112 Cal.App.2d at page Supp. 901: "Although no specific intent is prescribed as an element of this particular offense, a reading of the

---

[1]The word "molests" in section 647.6 (and consequently in these instructions) "is, in general, a synonym for annoy[s]." (*People* v. *Pallares*, *supra*, 112 Cal.App.2d at p. Supp. 901.)

section as a whole [then section 647a] in the light of the evident purpose of this and similar legislation enacted in this state indicates that the acts forbidden are those *motivated by* an unnatural or abnormal sexual interest or intent with respect to children." (Italics added.) This construction was affirmed by our high court in *In re Gladys R., supra,* 1 Cal.3d at pages 867-869. The court in *Gladys R.* noted "the comparatively narrow province of section 647a [now section 647.6]; it applies only to offenders who are *motivated by* an unnatural or abnormal sexual interest or intent." (1 Cal.3d at p. 867, italics added.) In making these observations, the court in *Gladys R.* distinguished another decision on section 647a, *People* v. *Carskaddon* (1957) 49 Cal.2d 423 [318 P.2d 4], by noting that the *Carskaddon* court "found no evidence that the defendant had committed an act coming within the purview of section 647a, and therefore held it unnecessary . . . to consider *the matter of motivation.*" (1 Cal.3d at p. 868, fn. 24, italics added.)

There is no doubt that in proving the mental state element of the section 647.6 offense, the prosecution must show that the acts or conduct "were motivated by an unnatural or abnormal sexual interest." (*In re Gladys R., supra,* 1 Cal.3d at pp. 867-869; *People* v. *Pallares, supra,* 112 Cal.App.2d at pp. Supp. 900-902; *People* v. *Thompson, supra,* 206 Cal.App.3d at pp. 463-466.) As Witkin and Epstein note in their treatise, "[m]otive is the emotional urge which induces a particular act." (1 Witkin & Epstein, Cal. Criminal Law, *supra,* § 100, p. 118.) In this context, the question whether "motive" is somehow different from "motivation" or "motivated by" is a question of some academic interest but of little practical significance. One instruction told the jurors here that "the following element[] must be proved: . . . Such acts or conduct were motivated by an unnatural or abnormal sexual interest in [K.V.]." Another instruction told the jurors that "[m]otive is not an element of the crime charged and need not be shown." We must bear in mind that the audience for these instructions is not a room of law professors deciphering legal abstractions, but a room of lay jurors reading conflicting terms.

We conclude the trial court erred by not excluding the section 647.6 offenses from the motive instruction of CALJIC No. 2.51.

b. *Was the Error Invited?*

For the doctrine of invited error to apply, it must be clear from the record that counsel had a deliberate tactical purpose in suggesting or acceding to an instruction, and did not act simply out of ignorance or mistake. (*People* v. *Duncan* (1991) 53 Cal.3d 955, 969 [281 Cal.Rptr. 273, 810 P.2d 131]; *People* v. *Wickersham* (1982) 32 Cal.3d 307, 334 [185 Cal.Rptr. 436,

650 P.2d 311]; *People v. Marshall* (1990) 50 Cal.3d 907, 931-932 [269 Cal.Rptr. 269, 790 P.2d 676].) "The error, in other words, must be 'invited.' " (*Wickersham, supra*, at p. 335.) This is because important rights of the accused are at stake, and it is the trial court's duty fully to instruct the jury. (*Duncan, supra*, at p. 969; *People v. Wickersham, supra*, at pp. 323-324.)

██ The only recorded comment on the decision to provide CALJIC No. 2.51 came in an instruction conference between the parties and the trial court; the court stated: "That brings us to 2.51. Both requested that. That will be given." Based on this record, we cannot say that defense counsel's request for CALJIC No. 2.51, as related to the section 647.6 charges, was done for a deliberate tactical purpose. Rather, the request, as related to these charges, appears to have been made out of ignorance or mistake. The section 647.6 offenses alleged against defendant were misdemeanor offenses and comprised only six of the twenty-two charges levied against him; the rest of the charges involved felony accusations (involving one victim, C.E.) to which CALJIC No. 2.51 was relevant. Defense counsel apparently focused on the more serious charges—the felonies—to which CALJIC No. 2.51 applied. It would have made no sense for defense counsel to request CALJIC No. 2.51 so the jury could *dispense* with finding the mental state element required to convict his client of the section 647.6 offenses. Even if defendant on appeal emerged victorious from this instructional gaffe, he could still be retried. And there is nothing in the record to indicate that defense counsel had his eye on an appeal in not excluding the section 647.6 offenses from the reach of CALJIC No. 2.51. In fact, defense counsel in his closing argument alluded to the requisite mental state element for the section 647.6 offenses.

We conclude that defense counsel did not invite the CALJIC No. 2.51 error.

c. *Was the Error Harmless?*

██ If conflicting instructions on the mental state element of an alleged offense can act to remove that element from the jury's consideration, the instructions constitute a denial of federal due process and invoke the *Chapman* "beyond a reasonable doubt" standard for assessing prejudice. (*People v. Guiton* (1993) 4 Cal.4th 1116, 1130 [17 Cal.Rptr.2d 365, 847 P.2d 45]; *People v. Lee* (1987) 43 Cal.3d 666, 673-674 [238 Cal.Rptr. 406, 738 P.2d 752]; *People v. Self* (1993) 12 Cal.App.4th 1222, 1226-1227 [16 Cal.Rptr.2d 67]; *Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711, 87 S.Ct. 824, 24 A.L.R.3d 1065].) This point is aptly illustrated in *Lee,* which is similar to the present case.

In *Lee,* the alleged offense was attempted murder, which requires the mental state element of a specific intent to kill. (*People v. Lee, supra*, 43

Cal.3d at p. 670.) The trial court in *Lee* instructed the jury on this required element, but also provided "implied malice" instructions which permitted dispensing with an actual specific intent to kill. (*Id.* at pp. 669-670.) The high court in *Lee* concluded that the appropriate review standard in determining whether such an instructional error is prejudicial is the "harmless beyond a reasonable doubt" test for federal constitutional errors. (*Id.* at p. 674; see *Chapman*, v. *California supra*, 386 U.S. at pp. 24-25 [17 L.Ed.2d at p. 710].) As the *Lee* court explained: "[C]onflicting instructions, which appear to require a specific intent to kill but which eliminate that requirement where implied malice is found, are closely akin to instructions which completely remove the intent issue from the jury's consideration: If the implied malice instructions are followed, the issue of intent may indeed be removed from the case." (43 Cal.3d at p. 674.)

 Similarly, if some jurors here chose to follow CALJIC No. 2.51 regarding the section 647.6 offenses, this would have removed the mental state element from these offenses. Consequently, we must determine whether the error in giving CALJIC No. 2.51 on the section 647.6 offenses involving K.V. was harmless beyond a reasonable doubt.

 In making this determination of harmlessness, we must ask "whether it appears 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.' " (*Yates* v. *Evatt* (1991) 500 U.S. 391, 402-403 [114 L.Ed.2d 432, 448, 111 S.Ct. 1884] [disapproved on other grounds in *Estelle* v. *McGuire* (1991) 502 U.S. 62, 72-73, fn. 4 [116 L.Ed.2d 385, 399, 112 S.Ct. 475]; *Chapman* v. *California, supra*, 386 U.S. at p. 24 [17 L.Ed.2d at pp. 710-711].) And "[t]o say that an error did not contribute to the verdict is . . . to find that error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record." (*Yates, supra*, 500 U.S. at p. 403 [114 L.Ed.2d at p. 448]; see *Sullivan* v. *Louisiana* (1993) 508 U.S. __ [124 L.Ed.2d 182, 113 S.Ct. 2078] [the proper *Chapman* inquiry is "whether the guilty verdict actually rendered in [the] trial [at hand] was surely unattributable to the error"].) Significant in this regard is whether the evidence is " 'of such compelling force as to show beyond a reasonable doubt' that the erroneous instruction 'must have made no difference in reaching the verdict obtained.' " (*People* v. *Harris* (1994) 9 Cal.4th 407, 431 [37 Cal.Rptr.2d 200, 886 P.2d 1193], quoting *Yates, supra*, 500 U.S. at p. 407 [114 L.Ed.2d at p. 451].) Employing this standard, we cannot say the error was harmless.

It is true, as the Attorney General notes, that the prosecutor in closing argument informed the jurors they had to find that defendant was motivated by an unnatural, abnormal sexual interest in the alleged victim to convict

him on the section 647.6 offenses. Closing arguments to the jury can be a relevant consideration in the prejudice equation. (See *People* v. *Lee*, *supra*, 43 Cal.3d at p. 677.) But the Attorney General goes astray in concluding that, "based on the evidence presented, it was untenable that the jury could have determined that [defendant's] conduct was motivated by other than an unnatural sexual interest in [K.V.]."

The principal evidence against defendant on the section 647.6 offenses involving K.V. came from K.V. and three of her classmates.

One of these classmates, Crystal, testified that defendant would frequently —almost daily—make comments or jokes to the whole class about the subject of sex. Two other classmates, Evangeline and Sabrina, confirmed this testimony. Crystal had heard defendant joke to the whole class, with K.V. present on one occasion and absent on another, that he was having an affair with K.V. Crystal also heard defendant say in class that K.V. looked like she could give a good "blow job."

K.V. testified that defendant had once jokingly made the "blow job" comment to her, and had made similar joking remarks in class to other girls. All of the sexual comments defendant made in class were joking ones, said K.V. According to K.V., she and defendant were very close when she was his student; she confided in him on both sexual and nonsexual matters. K.V. spent a lot of time privately with defendant, but defendant never touched her in a sexual manner and never tried to seduce her.

K.V. and defendant discussed her sex life, his sex life, and the sex lives of other students. Approximately 50 percent of their conversations concerned sex. They discussed how it would be fun to have sex in a pool or in a hot tub. When K.V. informed defendant that she was having unprotected sex with her boyfriend, he mentioned contraception to her. Once when K.V. borrowed a dollar from defendant and told him she would repay him, he responded, "No. Just get on your knees." After K.V. graduated from high school and had turned 18, defendant once invited her to return to school during his preparation time so he could "fix" the fact that she had not had sex in 2 months.

K.V. testified that she once walked into defendant's class when she was his student and told him: "I got laid last night." K.V. said she and Sabrina often discussed sex together in defendant's class. One of defendant's section 647.6 convictions involving K.V. arose from a conversation between K.V. and Sabrina that defendant joined, in which Sabrina had been talking about dating an older man. Defendant told the two of them about an affair he had had with an older woman. Defendant said that when he was fondling the

woman, he had "stuck his whole hand up her"; then, when the woman asked him to make love, he said that was disgusting.

Defendant's other section 647.6 conviction arose from a dream that he told K.V. about, after she "kind of pried it out of him." The dream entailed defendant having sexual intercourse with K.V. in a bed, the principal walking in on them, and K.V. jumping up "stark naked." After telling K.V. about this dream, defendant added that he wondered if K.V. looked as good as she had in his dream.

On the state of this evidence, we cannot say the error in providing CALJIC No. 2.51 on the section 647.6 offenses involving K.V. was harmless beyond a reasonable doubt. This is because we cannot say "beyond a reasonable doubt that [this] error . . . did not contribute to the verdict obtained." (*Chapman* v. *California, supra,* 386 U.S. at p. 24 [17 L.Ed.2d at p. 710]; *Yates* v. *Evatt, supra,* 500 U.S. at pp. 402-403, 407 [114 L.Ed.2d at pp. 448-449, 451]; *People* v. *Harris, supra,* 9 Cal.4th 431; contrast *People* v. *Self, supra,* 12 Cal.App.4th at p. 1227; see *People* v. *Lee, supra,* 43 Cal.3d at p. 679.)

The evidence shows that K.V. and defendant were confidants and freely discussed sexual and nonsexual matters, sometimes in a counseling mode. K.V. frankly and openly discussed sexual matters with others. Defendant and K.V. were very close and spent a lot of time privately, yet defendant never touched her in a sexual manner and never tried to seduce her. Defendant's sexual comments were almost always made in front of the whole class, which included boys as well as girls, and were usually uttered in a joking way. As for defendant's two convictions involving K.V., one count arose from defendant joining a conversation between K.V. and Sabrina and offering his experience with an *older* woman. On the other count, K.V. said she had to pry the details out of defendant. Contrary to the Attorney General's argument, it is tenable, on this evidence, that a juror here could have determined that defendant's conduct was motivated by other than an unnatural or abnormal sexual interest in K.V.[2] Thus, CALJIC No. 2.51 was not rendered irrelevant; in other words, we cannot say this "erroneous instruction 'must have made no difference in reaching the verdict obtained.'"

[2]The former version of the section 647.6 instruction (CALJIC No. 16.441) stated: "[M]otivated by an unnatural or abnormal sexual interest *with respect to children.*" (Italics added.) The current version of the instruction (CALJIC No. 16.440 (1990 rev.)) states: "[M]otivated by an unnatural or abnormal sexual interest in [the specific child victim]." This revision is apparently based upon language in *People* v. *Thompson, supra,* 206 Cal.App.3d at page 465. (See Use Note to CALJIC No. 16.440 (1990 rev.) (5th ed. pocket pt.) p. 177.) No issue is raised in this appeal regarding this revision. The parties and the trial court used the "specific child victim" strand in trying this case.

(*People* v. *Harris, supra,* 9 Cal.4th at p. 431, quoting *Yates* v. *Evatt, supra,* 500 U.S. at p. 407 [114 L.Ed.2d at p. 451].)

### DISPOSITION

The judgment of conviction on the two section 647.6 counts involving K.V. is reversed.

Puglia, P. J., and Raye, J., concurred.