Filed 1/20/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>ERICK LAMAR MOSELEY,<br><br>    Defendant and Respondent. | B303321<br><br>(Los Angeles County<br>Super. Ct. No. BA164739) |

APPEAL from an order of the Superior Court of Los Angeles County, William C. Ryan, Judge.  Reversed and remanded with directions.

Xavier Becerra, Attorney General, Phillip J. Lindsay, Assistant Attorney General, Julie A. Malone and Jennifer O. Cano, Deputy Attorney General, for Plaintiff and Appellant.

Law Office of Michael Satris and Michael Satris, under appointment by the Court of Appeal, for Defendant and Respondent.

Is a defendant who was sentenced to 66 years to life for violent sex offenses he committed at age 17 entitled to youth offender parole consideration under Penal Code section 3051[1] on federal and California constitutional equal protection grounds? We answer this question in the negative, finding that a rational basis exists for treating one strike offenders such as the defendant differently from other youthful offenders entitled to the benefit of the statute, applying the reasoning and analysis of the court in *People v. Williams* (2020) 47 Cal.App.5th 475, review granted July 22, 2020, S262229 (*Williams*).

## BACKGROUND

A jury convicted Erick Lamar Moseley (Moseley) in 1998 of four counts of forcible rape (§ 261, subd. (a)(2)), one count of forcible oral copulation (§ 288, subd. (c)), and one count of first degree robbery. (§ 211.) Moseley was 17 years old at the time he committed the crimes. The jury found that Moseley committed the offenses during a first degree burglary with the intent to commit rape in violation of section 667.61, subdivision (d)(4); that he committed forcible rape against more than one victim in violation of section 667.61, subdivision (e)(5); and that he personally used a dangerous or deadly weapon in violation of section 12022.3, subdivision (a). Moseley was sentenced in January 1999 to two consecutive terms of 25 years to life, one of those terms enhanced by four years for use of a weapon, together with an additional consecutive term of 12 years, for a total of 66 years to life.

_____

[1]     All further statutory references are to the Penal Code.

Moseley petitioned for a writ of habeas corpus in December 2018, arguing that his sentence violated the Eighth Amendment prohibition against cruel and unusual punishment. The Los Angeles County District Attorney filed a return admitting that under the current sentence, Moseley would not be eligible for parole until age 73. The District Attorney conceded that Moseley's sentence was unconstitutional under the Eighth Amendment because Moseley would have little, if any, meaningful life expectancy remaining at age 73.

In April 2019, Division Four of the First Appellate District held in *People v. Edwards* (2019) 34 Cal.App.5th 183 (*Edwards*) that section 3051, subdivision (h) violates the equal protection clause of the Fourteenth Amendment by excluding certain "One Strike" young adult offenders from the statute's benefits. The trial court ordered the California Department of Corrections and Rehabilitation (CDCR) to file an informal response in light of the court's decision in *Edwards*.[2] CDCR argued in its informal response that *Edwards* had no bearing on Moseley's Eighth Amendment claim or the relief owed him.

The trial court concluded that it was bound by the court's determination in *Edwards* that youth offender parole eligibility hearings must be made available to one strike youth offenders after 25 years of incarceration. The trial court granted Moseley's habeas petition on that basis.

_____

[2]     The CDCR reiterates the concession that Moseley's sentence is unconstitutional under the Eighth Amendment but argues that the issue here is whether equal protection principles were violated by treating one strike youth offenders differently from youth offenders convicted of other crimes.

The CDCR appeals from the trial court's October 18, 2019 order granting Moseley's habeas petition. CDCR contends the judgment granting habeas relief should be reversed and the matter remanded for resentencing "in accordance with constitutional principles." We agree.

## DISCUSSION

### I. Youth offender parole hearings

Section 3051 was enacted in 2013 to "'establish a parole eligibility mechanism that provides a person serving a sentence for crimes that he or she committed as a juvenile the opportunity to obtain release when he or she has shown that he or she has been rehabilitated and gained maturity. . . .'" (*In re Trejo* (2017) 10 Cal.App.5th 972, 980.) Under section 3051, youth offenders who committed their "controlling offense" when they were 25 years old or younger are entitled to a parole hearing after serving a designated period in custody. (§ 3051, subd. (b).) A "controlling offense" is defined as "the offense or enhancement for which any sentencing court imposed the longest term of imprisonment." (§ 3051, subd. (a)(2)(B).)

Section 3051, subdivision (b)(3) states: "A person who was convicted of a controlling offense that was committed when the person was 25 years of age or younger and for which the sentence is a life term of 25 years to life shall be eligible for release on parole at a youth offender parole hearing during the person's 25th year of incarceration. The youth parole eligible date for a person eligible for a youth offender parole hearing under this paragraph shall be the first day of the person's 25th year of

incarceration." Subdivision (h) of section 3051[3] excludes from youth offender parole consideration, however, offenders such as Moseley who were sentenced under section 667.61, the "One Strike" law.[4] The statutory exclusion does not apply to youth offenders convicted of intentional first degree murder. (§ 3051, subd. (h); *Edwards, supra,* 34 Cal.App.5th at p. 195.)

## II. Equal protection jurisprudence

The Fourteenth Amendment to the United States Constitution and article I, section 7 of the California Constitution guarantee equal protection under the law to all persons. To succeed on an equal protection claim, Moseley must show that the state has adopted a classification that affects two or more similarly situated groups in an unequal manner. (*People v. Wilkinson* (2004) 33 Cal.4th 821, 836. (*Wilkinson*).)

When a class of criminal defendants is similarly situated to another class of defendants who are sentenced differently, courts look to determine whether a rational basis exists for the

_____

[3] Subdivision (h) of section 3051 states: "This section shall not apply to cases in which sentencing occurs pursuant to Section 1170.12, subdivisions (b) to (i), inclusive, of Section 667, or Section 667.61, or to cases in which an individual is sentenced to life in prison without the possibility of parole for a controlling offense that was committed after the person had attained 18 years of age. This section shall not apply to an individual to whom this section would otherwise apply, but who, subsequent to attaining 26 years of age, commits an additional crime for which malice aforethought is a necessary element of the crime or for which the individual is sentenced to life in prison."

[4] Forcible rape and forcible oral copulation are two offenses subject to the One Strike law. (§ 667.61, subd. (c)(1), (c)(7).)

5

difference.  (*Johnson v. Department of Justice* (2015) 60 Cal.4th 871, 882. (*Johnson*).)  "[E]qual protection of the law is denied only where there is no 'rational relationship between the disparity of treatment and some legitimate governmental purpose.'" (*People v. Turnage* (2012) 55 Cal.4th 62, 74 (*Turnage*).)  "This standard of rationality does not depend upon whether lawmakers ever actually articulated the purpose they sought to achieve.  Nor must the underlying rationale be empirically substantiated. [Citation.]  While the realities of the subject matter cannot be completely ignored [citation], a court may engage in "'rational speculation'" as to the justifications for the legislative choice [citation].  It is immaterial for rational basis review 'whether or not' any such speculation has 'a foundation in the record.'" (*Id.* at pp. 74-75.)  To mount a successful rational basis challenge, a party must "'negative every conceivable basis'" that might support the disputed statutory disparity.  (*Heller v. Doe* (1993) 509 U.S. 312, 320. (*Heller*).)  If a plausible basis exists for the disparity, "[e]qual protection analysis does not entitle the judiciary to second-guess the wisdom, fairness, or logic of the law." (*Turnage*, at p. 74.)

### A.  *People v. Bell*

Applying the deferential rational basis standard, Division Eight of this Court rejected a juvenile one strike defendant's equal protection challenge to section 3051.  (*People v. Bell* (2016) 3 Cal.App.5th 865, 876-880 (*Bell*), review granted on another ground on Jan. 11, 2017.)  The 14-year-old defendant in *Bell* argued there was no rational basis for treating him more severely than a juvenile defendant convicted of special circumstances murder.  (*Id.* at p. 878.)  The court in *Bell* disagreed and

concluded that the defendant's commission of multiple offenses, including rape, burglary with the intent to commit rape, and assault with a firearm, provided a rational basis for excluding one strike offenders from section 3051.

The court in *Bell* further concluded that recidivism concerns also provides a rational basis for excluding violent sex offenders from section 3051. (*Bell, supra,* 3 Cal.App.5th at p. 879.) The court reasoned that several comprehensive statutory schemes, including the Sexually Violent Predators Act (Welf. & Inst. Code, § 6600 et seq.), the Mentally Disordered Offenders Act (Pen. Code, § 2690 et seq.), and the section 290 lifetime registration requirement imposed on a large class of sex offenders, reflect a legislative concern that sex offenders pose a risk of recidivism. (*Bell,* at pp. 879-880.) The court in *Bell* determined that recidivism concerns were the basis for the Legislature's exclusion of one strike offenders from section 3051 and that the risk of recidivism provided a rational basis that exclusion. (*Ibid.*) The California Supreme Court subsequently ordered *Bell* vacated and transferred for reconsideration in light of *People v. Contreras* (2018) 4 Cal.5th 349 (*Contreras*).

### B. People v. Contreras

In *Contreras,* the California Supreme Court held that the Eighth Amendment's prohibition against cruel and unusual punishment prevented juvenile non-homicide offenders from receiving sentences of 50 years to life and 58 years to life. (*Contreras, supra,* 4 Cal.5th at p. 356.) Citing *Graham v. Florida* (2010) 560 U.S. 48 (*Graham*), the court in *Contreras* noted that while "'[r]ecidivism is a serious risk to public safety, and so incapacitation is an important goal' . . . [b]ut the 'characteristics

of juveniles' make it 'questionable' to conclude that a juvenile offender is incorrigible; indeed, "'incorrigibility is inconsistent with youth.'"" (*Contreras*, at p. 366.)  The court noted that the statute's distinction between one strike defendants and those convicted of intentional first degree murder appeared inconsistent with United States Supreme Court constitutional jurisprudence:  "[W]e note defendants' contention that the current treatment of juvenile One Strike offenders is anomalous given that juveniles convicted of special circumstance murder and sentenced to LWOP[5] are now eligible for parole during their 25th year in prison.  This scheme appears at odds with the [United States Supreme Court's] observation that 'defendants who do not kill, intend to kill, or foresee that life will be taken are categorically less deserving of the most serious forms of punishment than are murderers. . . .  Although an offense like robbery or rape is "a serious crime deserving serious punishment," those crimes differ from homicide crimes in a moral sense.' [Citation.]  In the death penalty context, the high court has said 'there is a distinction between intentional first-degree murder on the one hand and nonhomicide crimes against individual persons, even including child rape, on the other.  The latter crimes may be devastating in their harm, as here, but "in terms of moral depravity and of the injury to the person and to the public," they cannot be compared to murder in their "severity and irrevocability."'" (*Id.* at p. 382, quoting *Graham, supra*, 560 U.S. at p. 69 and *Kennedy v. Louisiana* (2008) 554 U.S. 407, 438.)

The court in *Contreras* went on to state:  "The parties point to no other provision of our Penal Code, and we are aware of none, that treats a nonhomicide offense more harshly than

_____

[5]      Life in prison without the opportunity for parole (LWOP).

8

special circumstance murder. . . . We are also unaware of any other jurisdiction that punishes juveniles for aggravated rape offenses more severely than for the most aggravated forms of murder. Further, we note the concern raised by amicus curiae . . . that if defendants had killed their victims after the sexual assaults and had been sentenced to LWOP, they would have been eligible for a youth offender parole hearing after 25 years of incarceration . . . . [¶] Defendants contend that this treatment of juvenile One Strike offenders violates principles of equal protection and the Eighth Amendment. There is also a colorable claim that it constitutes 'unusual punishment' within the meaning of article I, section 17 of the California Constitution. As with the other issues arising from new legislation, we decline to resolve these contentions here. It suffices to note . . . that the current penal scheme for juveniles may warrant additional legislative attention." (*Contreras, supra*, 4 Cal.5th at p. 382.)

### C. *People v. Edwards*

Relying on *Contreras,* the First Appellate District in *Edwards* held that equal protection required one strike young adult offenders to be afforded a youth offender parole hearing under section 3051 and that the statute's exclusion of such offenders was unconstitutional. (*Edwards, supra*, 34 Cal.App.5th at p. 197.) The defendants in *Edwards* were both 19 years old when they jointly sexually assaulted and robbed the victim and her male friend. Their subsequent conviction of one strike and other offenses resulted in sentences of 129 years to life and 95 years to life. (*Id.* at p. 186.) The defendants challenged their respective sentences as cruel and unusual punishment. They

9

also challenged on equal protection grounds their exclusion from the provisions of section 3051. (*Ibid.*)

The court in *Edwards* noted, as did the California Supreme Court in *Contreras*, that section 3051 makes youthful offender parole hearings available even for first degree murderers (except those who committed murder as an adult and received a sentence of life without parole). The *Edwards* court observed that "United States Supreme Court case law has long distinguished between such murders and other crimes against persons, reserving the most draconian sentences for murderers alone. Consistent with the Eighth Amendment, first degree murderers can be executed; defendants convicted of even the most egregious sexual crimes cannot. . . . Section 3051 flouts this pattern. It makes youthful-offender parole hearings available to intentional first degree murderers after 25 years of incarceration, while categorically denying them to One Strike sex offenders." (*Edwards, supra*, 34 Cal.App.5th at p. 197, citing *Kennedy v. Louisiana, supra,* 554 U.S. 407, *Coker v. Georgia* (1977) 433 U.S. 584, *Miller v. Alabama* (2012) 567 U.S. 460, and *Graham, supra*, 560 U.S. at p. 82.) The court in *Edwards* went on to state: "Considering this United States Supreme Court jurisprudence and the California Supreme Court's invocation of it in *Contreras*, we conclude section 3051's carve-out for One Strike defendants violates principles of equal protection." (*Edwards*, at p. 197.)

### D. *People v. Williams*

The Fourth Appellate District in *Williams,* disagreed with *Edwards,* finding that the threat of recidivism by violent sexual offenders provides a rational basis for excluding one strike youth offenders from the benefits of section 3051. (*Williams, supra*, 47

Cal.App.5h at p. 493.)  The court in *Williams* found the *Edward* court's reliance on *Contreras* misplaced for two reasons.  First, *Contreras* involved a constitutional challenge to LWOP sentences under the Eighth Amendment's prohibition against cruel and unusual punishment and not whether such sentences violated the equal protection clause.  Second, *Contreras* only addressed the constitutional implications of juvenile offenders sentenced to LWOP, whereas the defendant in *Williams* was a 24-year-old adult when he committed sexually violent crimes against two different victims.  (*Williams*, at pp. 492-493.)  Given these differences, the court in *Williams* did not find *Contreras* to be controlling authority on the issue before it.  The *Williams* court concluded:  "Given the deferential standard we apply in determining rationality for equal protection purposes [citation], and given our view that the risk of recidivism provides a rational basis for the Legislature to treat violent felony sex offenders sentenced under the one strike law differently than murderers or others who commit serious crimes, we reject defendant's equal protection challenge to subdivision (h) of section 3051." (*Williams*, at p. 493.)

The California Supreme Court granted review of *Williams* on the issue of whether section 3051, subdivision (h) violates the equal protection clause of the Fourteenth Amendment by excluding young adults convicted and sentenced for serious sex crimes under the one strike law from youth offender parole consideration, while young adults convicted of first degree murder are entitled to such consideration.

11

**III.  Section 3051, subdivision (h) does not violate equal protection**

    **A.  Mosley is not similarly situated to those who do not commit violent sex crimes.**

The Supreme Court's grant of review rendered *Williams* persuasive, rather than binding authority.  (Cal. Rules of Court, rule 8.1115(e)(1).)  Nevertheless, we are persuaded by its analysis over that of *Edwards* for the following reasons.  First, *Edwards* broadly holds that murderers and one strikers are "similarly situated" because the purpose of section 3051 is to give youthful offenders a "meaningful opportunity to obtain release" after lengthy prison sentences. (§ 3051(e)).  The Constitution does not require things that are different in fact or opinion receive the same treatment under the law (*Briggs v. Brown* (2017) 3 Cal.5th 808, 842.).  Absent a showing that two groups are similarly situated with respect to the legitimate purpose of the law, an equal protection analysis should end.  (*People v. Rhodes* (2005) 126 Cal.App.4th 1374, 1384.)

In *Edwards*, the court assumed that one strike youth offenders (who are excluded from youth offender parole) and youthful murderers (who are not excluded) are similarly situated because they are "both aged 25 years or younger [and] are two groups of violent youthful offenders who seek the opportunity to demonstrate after extended terms of imprisonment that they should rejoin society." (*Edwards, supra*, 34 Cal.App.5th at p. 195, citing *People v. Brandao* (2012) 203 Cal.App.4th 436, 442.)  However, there is no established precedent that supports this conclusion.  If a common interest in rejoining society after an extended imprisonment were the proper standard, nearly every

inmate would be similarly situated for any statute with an ameliorative effect on an inmate's sentence.

Second, youthful sex offenders and youthful murderers are not similarly situated because offenders who commit different crimes are not similarly situated. (*People v. Macias* (1982) 137 Cal.App.3d 465, 472-473.) Moseley, a youthful sex offender is not similarly situated to a youthful murderer as they are different crimes.

### B. Moseley's exclusion from youth offender parole consideration is rationally related to a legitimate penal interest.

"[L]egislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." (*City of Cleburne, Tex. v. Cleburne Living Center* (1985) 473 U.S. 432, 440; *Wilkinson, supra*, 33 Cal.4th at p. 836.) As set forth above, to prove an equal protection violation, a party must defeat ""every conceivable basis" that might support the disputed statutory disparity." (*Johnson, supra*, 60 Cal.4th at p. 881, quoting *Heller, supra,* 509 U.S at pp. 319-320.) A reviewing court "'must accept any gross generalizations and rough accommodations that the Legislature seems to have made.'" (*Turnage, supra*, 55 Cal.4th at p. 77.) "'A classification is not arbitrary or irrational simply because there is an "imperfect fit between means and ends."'" (*Turnage,* at p. 77, quoting *Heller*, at p. 321)

Though the *Edwards* court found that section 3051's exclusion of one strike offenders does not have a rational basis, we find otherwise when comparing youthful sex offenders to youthful murderers. (*Edwards, supra,* 34 Cal.App.5th at pp. 197-200.) Indeed, there are significant public safety concerns that

13

support the exclusion of these sex offenders from youth offender parole consideration, including recidivism. The United States Supreme Court explained, "[w]hen convicted sex offenders reenter society, they are much more likely than any other type of offender to be rearrested for a new rape or sexual assault." (*McKune v. Lile* (2002) 536 U.S. 24, 33.) Our Legislature has long expressed special concern for recidivism among sex offenders. For example, certain sex offenders are required to register for life after release from custody (§ 290, et seq.), and the "One Strike" Law was enacted precisely to ensure that violent sex offenders "be separated from society to prevent reoffense." (*People v. Wutzke* (2002) 28 Cal.4th 923, 930.) For purposes of rational basis review, it is immaterial whether a conceivable basis for the classification has "a foundation in the record." (*Turnage, supra*, 55 Cal.4th at p. 75.)

Given the deferential standard we apply in determining rationality for equal protection purposes, and given our view that the risk of recidivism provides a rational basis for the Legislature to treat felony sex offenders sentenced under the one strike law differently that murderers, we reject the argument that subdivision (h) of section 3051 violates equal protection and is unconstitutional.

## DISPOSITION

The order granting Moseley's petition for writ of habeas corpus is reversed and the matter is remanded to the superior court for resentencing.

<u>CERTIFIED FOR PUBLICATION</u>

_____, J.
CHAVEZ

I concur:

_____, J.
HOFFSTADT

15

*People v. Moseley*, B303321

ASHMANN-GERST, Acting P. J.—Dissenting


I respectfully dissent.

Following *People v. Williams* (2020) 47 Cal.App.5th 475 (*Williams*), review granted July 22, 2020, S262229, the majority holds that Penal Code section 3051, subdivision (h),[1] does not violate equal protection even though it excludes juveniles sentenced under the "One Strike" law (§ 667.61) from youth offender parole consideration, but grants juveniles convicted of special circumstance murder such consideration. In so holding, *Williams* disagreed with the holding in *People v. Edwards* (2019) 34 Cal.App.5th 183, 197 (*Edwards*) that section 3051 violates equal protection. (*Williams*, *supra,* at pp. 492–493.)

I disagree with the majority's reliance upon *Williams*, *supra*, 47 Cal.App.5th 475. Rather, I agree with the analysis in *Edwards*, *supra*, 34 Cal.App.5th at page 197 that section 3051's categorial exclusion of youthful One Strike offenders from its youth offender parole scheme violates equal protection. Thus, I would affirm the trial court's order granting defendant and respondent Erick Lamar Moseley's petition for writ of habeas corpus on equal protection grounds.


_____, Acting P. J.
    ASHMANN-GERST

_____
[1]    All further statutory references are to the Penal Code unless otherwise indicated.

1